UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

IN RE: AUTOMOTIVE PARTS
ANTITRUST LITIGATION                                   MASTER FILE NO. 12-md-02311

_____

In re: Electric Powered Steering Assemblies            HON. MARIANNE O. BATTANI

_____

THIS DOCUMENT RELATES TO:

Dealership Actions                                     2:13-cv-01902
End-Payor Actions                                      2:13-cv-01903
_____/

OPINION AND ORDER DENYING DEFENDANTS' SEPARATE MOTIONS TO
DISMISS THE DEALERSHIP AND END-PAYOR PLAINTIFFS'
CONSOLIDATED AMENDED COMPLAINTS FOR
LACK OF PERSONAL JURISDICTION

This matter is before the Court on Defendants Showa Corporation and American Showa, Inc.'s Motions to Dismiss the Dealership Plaintiffs' and End-Payor Plaintiffs' Consolidated Amended Complaints. (Case No. 13-1902, Doc. No. 52; Case No. 13-1903, Doc. No. 41). Although the motions were filed separately against the Plaintiff classes, the Court consolidates them for purposes of this opinion. The Court scheduled a hearing on the motions for January 28, 2015, but the parties waived oral argument. For the reasons stated below, Defendants' motions are **DENIED**.

**I.     RELEVANT FACTS**

Automobile Dealership Plaintiffs ("ADPs") and End-Payor Plaintiffs ("EPPs") (collectively referred to as "Indirect Purchaser Plaintiffs" or "IPPs") filed separate consolidated amended class action complaints alleging several federal and state law claims against numerous Defendants. Indirect Purchaser Plaintiffs allege Defendants

engaged in a conspiracy to "unlawfully fix, artificially raise, maintain and/or stabilize prices, rig bids for, and allocate the market and customers in the United States for Electric Powered Steering Assemblies," for which they seek damages and other appropriate equitable relief. (See, e.g., Case No. 13-1902, Doc. No. 17 at ¶ 1). Generally, Defendants are in the business of manufacturing or selling Electric Powered Steering Assemblies ("EPS Assemblies"), which "provide electronic power to assist the driver to more easily steer the automobile," and "include electric power steering motors." (Case No. 13-1903, Doc. No. 9 at ¶ 3). EPS Assemblies "link the steering wheel to the tires, and include the column, intermediate shaft, and electronic control unit, among other parts, but do not include the steering wheel or tires." (Id.) In addition, EPS Assemblies include "Pinion-Assist Type Electric Powered Steering Assemblies," which "provide power to the steering gear pinion shaft from electric motors to assist the driver to more easily steer the automobile." (Id.)

Defendant Showa Corporation ("Showa Japan") is incorporated in Japan with its principal place of business in Saitama, Japan. (Id. at ¶ 78). Defendant American Showa, Inc. ("Showa USA") is incorporated in Ohio with its principal place of business in Sunbury, Ohio. (Id. at ¶ 79). Indirect Purchaser Plaintiffs allege that Showa Japan, "directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed and/or sold Pinion-Assist Type Electric Powered Steering Assemblies that were purchased throughout the United States, including in this District, during the Class Period." (Id. at ¶ 78). In addition, IPPs assert Showa USA sold EPS Assemblies that were purchased in the United States "under the control and direction of

[Showa Japan], which controlled its policies, sales, and finances." (Case No. 13-1902, Doc. No. 17 at ¶ 115).

On April 23, 2014, the Department of Justice ("DOJ") announced that Showa Japan pleaded guilty to participating in a conspiracy to fix prices and rig bids for EPS Assemblies installed in automobiles sold in the United States. (Id. at ¶ 9). As a result, Showa Japan paid a $19.9 million fine. (Id.) According to the Information, Showa Japan met with coconspirators in the United States to discuss bids and price quotations regarding one of its main customers, Honda. (Id. at ¶ 164(a)). In addition, Showa Japan sold EPS Assemblies "to Honda in the United States and elsewhere at collusive and noncompetitive prices." (Id. at ¶ 164(e)).

The parties do not dispute that neither Defendant maintains any contacts with the State of Michigan. (Case No. 13-1903, Doc. No. 41, Ex. F at ¶¶ 4-11, Ex. G at ¶¶ 4-14). Rather, Defendants maintain several contacts with the United States as a whole. Showa USA is incorporated in Ohio and does business in the United States. Showa USA also maintains offices in Blanchester, Ohio; Sunbury, Ohio; and Los Angeles, California. Both companies are alleged to have sold EPS Assemblies in the United States. Last, although it is agreed that Showa Japan and Showa USA are separate corporations, the parties disagree as to the extent of control that Showa Japan exercises over its wholly owned subsidiary, Showa USA.

## II.   STANDARD OF REVIEW

Before answering a complaint, a defendant may move for dismissal based on lack of personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). "Where personal jurisdiction is challenged in a 12(b)(2) motion, the plaintiff has the burden of

3

establishing that jurisdiction exists." Am. Greetings Corp. v. Cohn, 839 F.2d 1164, 1168 (6th Cir. 1988). See also McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936) (plaintiff "must allege in his pleading the facts essential to show jurisdiction").

If a district court rules on the motion before trial, the court, in its discretion, "may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." Serras v. First Tenn. Bank Nat'l Ass'n, 875 F.2d 1212, 1214 (6th Cir. 1989) (quoting Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981)). The district court is granted considerable discretion in this decision and will be reversed only for abuse of discretion. Theunissen v. Matthews, 935 F.2d 1454, 1458 (6th Cir. 1991); Mich. Nat. Bank v. Quality Dinette, Inc., 888 F.2d 462, 466 (6th Cir. 1989). The method the court selects will affect the magnitude of the burden on the plaintiff to avoid dismissal. Serras, 875 F.2d at 1214. Where, as is the case here, the court relies solely on the parties' affidavits to reach its decision on the motion, the burden rests on the plaintiff to establish a *prima facie* showing of jurisdiction in order to avoid dismissal, Intera Corp. v. Henderson, 428 F.3d 605, 615 (6th Cir. 2005), and the court must consider the pleadings and affidavits in the light most favorable to the plaintiff. CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1261-62 (6th Cir. 1996).

In considering 12(b)(2) motions, the court does not weigh the controverting assertions of the moving party due to its interest in "prevent[ing] non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts." CompuServe, Inc., 89 F.3d at 1262 (quoting Theunissen, 935 F.2d at 1459).

**III.   ANALYSIS**

Defendants argue that personal jurisdiction should be determined based on their contacts with Michigan, not the United States as a whole. Further, Defendants claim that because neither company has any contacts with Michigan, the Court may not exercise personal jurisdiction over either Defendant. Therefore, the Court must determine the appropriate forum by which to measure Defendants' contacts and whether those contacts are sufficient for this Court to exercise specific personal jurisdiction over both Showa Japan and Showa USA.

**A.   Appropriate Forum**

The Supreme Court has held that to subject a nonresident defendant to personal jurisdiction, due process requires that he must "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). The defendant's "conduct and connection with the forum State" must be "such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). The party seeking to assert personal jurisdiction bears the burden of demonstrating that such jurisdiction in fact exists. Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 887 (6th Cir. 2002).

The relevant forum for assessing jurisdictional contacts is usually the state in which the court sits. However, for federal antitrust claims, § 12 of the Clayton Act provides that:

> Any suit, action, or proceeding under the antitrust laws against a
> corporation may be brought not only in the judicial district whereof it is an

>inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.

15 U.S.C. § 22. Further, the Sixth Circuit has reasoned that "[w]hen Congress has enacted such [a] nationwide service of process statute[ ], personal jurisdiction exists whenever the defendant has 'sufficient minimum contacts with the *United States*' to satisfy the due process requirements under the Fifth Amendment." Carrier Corp v. Outokumpu Oyj, 673 F.3d 430, 449 (6th Cir. 2012) (emphasis in original). Thus, the question becomes whether Defendants have sufficient minimum contacts with the United States, not Michigan, for this Court's exercise of personal jurisdiction to comply with the Constitution.

Notwithstanding the Sixth Circuit's reasoning in Carrier Corp. that 15 U.S.C. § 22 transforms the minimum contacts analysis from a state-specific inquiry to a nationwide inquiry, Defendants argue that IPPs must also establish the venue requirements of 28 U.S.C. § 1391. This argument is based on holdings from cases in the Second Circuit and the D.C. Circuit, which found that proper venue is a condition precedent to exercising nationwide service of process on a defendant "wherever it may be found." However, these cases fail to persuade the Court that it should ignore the Sixth Circuit's analysis in Carrier Corp. and restrict the jurisdictional analysis solely to Defendants' contacts with the State of Michigan.

In Daniel v. Am. Bd. of Emergency Med., 428 F.3d 408 (2d Cir. 2005), a class of plaintiffs brought an antitrust action against several corporate and hospital defendants in the Western District of New York. None of the defendants were incorporated or maintained a principal place of business in New York. Id. at 417. After interpreting the

6

language of the statute, the Second Circuit found that 15 U.S.C. § 22 did not permit the court's exercise of personal jurisdiction over out-of-state defendants because the plaintiffs could not establish proper venue required by the first clause of § 22. Id. at 427-28. In other words, the court found that satisfying the venue clause is a prerequisite to exercising jurisdiction based on the nationwide service of process provision found in the second clause. Id. at 424-25. Because none of the defendants "transacted business" in New York, as required by the first clause of § 22, venue was improper. Thus, the plaintiffs could not "avail themselves of that statute's worldwide service of process provision to establish personal jurisdiction in that district." Id. at 428.

The D.C. Circuit reached a similar conclusion in GTE New Media Servs. Inc. v. BellSouth Corp., 199 F.3d 1343 (D.C. Cir. 2000). In GTE, the plaintiffs brought an antitrust action against several defendants whose only contact with the forum arose from operating a website accessible to individuals in the district. Id. at 1345. The plaintiffs argued that personal jurisdiction was authorized independently under 15 U.S.C. § 22, which the district court accepted. Id. On appeal, the D.C. Circuit reversed, holding that the "invocation of the nationwide service clause rests on satisfying the venue provision" of § 22. Id. at 1350. Thus, the statute did not provide an independent basis for the court to exercise personal jurisdiction over the defendants without first satisfying the venue clause. Id. at 1351.

However, neither case cited by Defendants is on point. Notably absent from the above-cited cases is an alleged antitrust conspiracy of the magnitude involved in this case. More importantly, neither case arose under to a transfer order of the United States Judicial Panel on Multidistrict Litigation pursuant to 28 U.S.C. § 1407, which

7

found that although other venues may be appropriate, "the Eastern District of Michigan will serve the convenience of the parties and witnesses and promote just and efficient conduct of this litigation." (Case No. 12-02311, Doc. No. 2). The Panel also noted that "several defendants are located in this district and a related criminal investigation is ongoing there." (Id.) As a result, once the Panel decides to exercise its authority, "[t]ransfers under Section 1407 are simply not encumbered by considerations of in personam jurisdiction and venue . . . ." In re FMC Corp. Patent Litig., 422 F. Supp. 1163, 1165 (J.P.M.L. 1976).

The Court notes the inherent risk involved in consolidation of cases in a multidistrict litigation that the chosen district may not serve as the appropriate venue for all parties under 28 U.S.C. § 1391. However, for jurisdictional purposes, it is well-settled that in multidistrict cases the United States serves as the appropriate forum for analyzing jurisdictional contacts, not the venue selected by the Panel. Other courts faced with multidistrict litigation have concluded the same, and the cases cited by Defendants do not persuade this Court otherwise. See In re Agent Orange Prod. Liab. Litig., 818 F.2d 145, 163 (2d Cir. 1987) (noting that section 1407, the multidistrict litigation statute, is legislation authorizing federal courts to exercise nationwide personal jurisdiction); In re Plastic Bag Prod. Patent & Antitrust Litig., 1987 WL 14500, at *2 (D. Mass. April 24, 1987) ("This action brought against the defendants in the Northern District of Illinois is a federal question case involving the antitrust laws of the United States. It is therefore appropriate to examine all contacts of the defendants throughout the United States to determine whether such contacts are sufficient to support the exercise of jurisdiction over the defendants by a United States court."). Requiring a

forum-specific jurisdictional inquiry in multidistrict litigation would serve to undermine the purpose of multidistrict consolidation and require duplicative actions in other districts. Consequently, Defendants' contacts with the United States, not Michigan, will determine whether the Court may exercise personal jurisdiction in accordance with due process.

### B. Specific Personal Jurisdiction

Although Defendants limited their jurisdictional analysis to Michigan, the court will briefly address Defendants contacts' with the United States. Specific jurisdiction subjects a defendant to actions in the forum arising out of or relating to the defendant's contacts with the forum. Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414 (1984). In determining whether the exercise of specific personal jurisdiction is proper, the Sixth Circuit follows a three-prong test originally laid out in Southern Machine Co. v. Mohasco Indus., Inc., 401 F.2d 374, 381 (6th Cir. 1968):

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

Calphalon Corp. v. Rowlette, 228 F.3d 718, 721 (6th Cir. 2000) (citing Mohasco, 401 F.2d at 381).

"Purposeful availment" means that the defendant's "contacts proximately result from the actions by defendant *himself* that create a 'substantial connection' with the forum State." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (emphasis in original) (quoting McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957)). This purposeful availment requirement "ensures that a defendant will not be haled into a jurisdiction solely as the result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the

9

'unilateral activity of another party or third person.'" Id. at 475 (quoting Keeton v. Hustler Magazine, 465 U.S. 770, 774 (1984); Helicopteros, 466 U.S. at 417).

It is undisputed that Defendants have numerous contacts with the United States. Showa USA is incorporated in the United States and maintains offices, employees, and sells products in the United States. Showa Japan pleaded guilty to "causing a consequence" in the United States by participating in a conspiracy to rig bids and fix the prices of EPS Assemblies sold to customers in the United States. It also admitted to traveling to the United States to meet with coconspirators. In addition, Showa Japan is alleged to have controlled the actions of its United States-based subsidiary during the class period. Defendants' contacts with the forum are not random and attenuated, but instead, purposefully directed at the forum. Thus, it is clear that Defendants purposefully availed themselves of the privilege of doing business in the United States.

Next, the cause of action must arise from Defendants' activities in the forum. This prong is satisfied when the cause of action is "related to" or "connected with" the forum contacts. In re Trade Partners, Inc., Investors Litigation, 532 F. Supp. 2d 904, 911 (W.D. Mich. 2007). Here, Indirect Purchaser Plaintiffs' cause of action, the alleged antitrust conspiracy, arises directly out of Defendants' contacts with the United States. The same contacts that support personal jurisdiction give rise to the IPPs' antitrust claims. Thus, the "arising from" prong is satisfied.

Generally, "[i]f prongs one and two of the Southern Machine test are satisfied, then there is an inference that the reasonableness prong is satisfied as well." Intera Corp. v. Henderson, 428 F.3d 605, 618 (6th Cir. 2005). Here, the Court's exercise of personal jurisdiction over Defendants is certainly reasonable. Defendants' contacts with

10

the United States are numerous, and their conduct is directed at the forum. Thus, the last prong of the test is satisfied.

In sum, the Court's exercise of specific personal jurisdiction over Defendants satisfies due process.

## IV. CONCLUSION

Consequently, Defendants' motions are **DENIED**.

**IT IS SO ORDERED.**


Date:  March 2, 2015                                                s/Marianne O. Battani
                                                                                MARIANNE O. BATTANI
                                                                                United States District Judge


### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on March 2, 2015.

                                                                                s/ Kay Doaks
                                                                                Case Manager